**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | |
| GEORGE WASHINGTON BRIDGE BUS | ) | Chapter 7 |
| STATION DEVELOPMENT VENTURE LLC, | ) | Case No. 19-13196 (DSJ) |
| et al., | ) | |
| | ) | |
| *Debtor.* | ) | |

-----------------------------------------------------------------

| | | |
|---|---|---|
| GEORGE WASHINGTON BRIDGE BUS | ) | |
| STATION AND INFRASTRUCTURE | ) | |
| DEVELOPMENT FUND, LLC and NEW YORK | ) | |
| CITY REGIONAL CENTER, LLC | ) | |
| | ) | |
| *Plaintiffs,* | ) | Adv. Proc. No. 21-1200 (DSJ) |
| | ) | |
| - against - | ) | |
| | ) | |
| PORT AUTHORITY OF NEW YORK AND | ) | |
| NEW JERSEY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

-----------------------------------------------------------------

## OPINION AND ORDER GRANTING MOTION FOR REMAND BASED ON PERMISSIVE ABSTENTION AND EQUITABLE REMAND

**A P P E A R A N C E S :**

**WEIL GOTSHAL & MANGES LLP**
*Counsel for Plaintiffs*
765 5th Avenue
New York, NY 10153
By:   David J. Lender, Esq.
       Jessie B. Mishkin, Esq.
       David J. Cohen, Esq.

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
*Counsel for Defendant*
One Manhattan West
New York, NY 10001
By:   Jeffrey Geier, Esq.
       Patrick G. Rideout, Esq.

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion for abstention and remand to state court of an adversary proceeding[1] that was removed from state court by the defendant, and that is now pending under the umbrella of the bankruptcy (the "**Main Action")** of George Washington Bridge Bus Station Development Venture LLP (the "**Debtor**"). The plaintiffs seeking remand are Debtor's pre-petition senior secured lenders, George Washington Bridge Bus Station and Infrastructure Development Fund, LLC (the "**Fund**") and New York City Regional Center, LLC ("**NYCRC**," and, together with the Fund, the "**Senior Lenders**"). The Senior Lenders allege that they stood to recover approximately $72 million on account of their secured debt from Debtor as a result of a negotiated sale agreement that had received preliminary Court approval, which, if finalized, would have conveyed Debtor's long-term lease of a bus terminal owned by defendant the Port Authority of New York and New Jersey (the "**Port**" or "**Port Authority**") along with associated rights to a prospective purchaser named Monarch Alternative Capital LP ("**Monarch**").

The Port Authority, as the site's owner and the lessor pursuant to the relevant long-term ground lease (the "**Ground Lease**"), asserted that, under the Bankruptcy Code, it was entitled to receive "adequate assurance" that all its entitlements as lessor would be satisfied. However, the Port Authority, the Senior Lenders, and Debtor entered a settlement agreement during the bankruptcy case that allegedly, among other things and with limited exceptions not relevant here, waived the Port Authority's rights in connection with most existing defaults under the Ground Lease. The Senior Lenders' lawsuit alleges that the Port Authority unreasonably raised baseless objections regarding elevator-related issues at the site and refused to consent to the proposed

---

[1] This opinion refers to all docket entries from the Main Action as "BK ECF" and all docket entries from this adversary proceeding as "ECF."

transfer to Monarch, thus causing a lucrative transaction to collapse and saddling the estate and other parties with a much less favorable backup transaction which will cause the Senior Lenders to collect little if anything. The Senior Lenders assert that the Port Authority's conduct constitutes actionable breach of the Settlement Agreement and tortious interference with current and prospective business relationships.

After being served with the Senior Lenders' state-court action, the Port Authority removed the action to the District Court, which referred it to this Court. The Senior Lenders responded by moving for mandatory abstention under 28 U.S.C. § 1334(c)(2), permissive abstention under 28 U.S.C. § 1452(b), and/or for a remand of the action to state court on equitable grounds.

For the reasons discussed below, the Court grants the motion. The Court has "arising in" jurisdiction over the action such that mandatory abstention is not warranted. Nevertheless, as detailed below, the Court will permissively abstain and equitably remand the case to the state court where it was commenced. In brief, the case is a dispute entirely among non-debtors, it involves exclusively state-law claims, and the plaintiffs seek monetary damages directly from a non-debtor defendant, which will not impact the bankruptcy claims or distribution process in any appreciable way. Further, resolving the dispute neither requires substantial assessment of bankruptcy-specific issues or orders, nor threatens to hinder the bankruptcy process.

## BACKGROUND

### A. The Main Bankruptcy Action, the Settlement Agreement, the Failed Monarch Transaction, and the Subsequent Less-Lucrative Sale to JMB Capital Partners

Debtor was the lessee under the 99-year Ground Lease, by which the Port Authority authorized Debtor to operate and maintain the retail portion of the George Washington Bridge Bus Station. [BK ECF No. 472 at PDF page 7]. Debtor undertook a substantial construction project with Tutor Perini Construction Corp. ("**Tutor Perini**") as general contractor, but, burdened with

high expenses and insufficient revenues, Debtor filed a voluntary Chapter 11 petition in October

2019.  [BK ECF No. 1].

During the subsequent bankruptcy proceeding, Tutor Perini asserted a claim for $113

million in connection with its construction work on the construction project, and Tutor Perini

further asserted that its claim must be paid in full before Debtor could sell the Ground Lease.

[Complaint[2] ¶ 5].  Meanwhile, the Port Authority asserted that any buyer or assignee of the Ground

Lease must indemnify the Port Authority for any losses it might sustain in litigation with Tutor

Perini.  [*Id.*].  Eventually, the Senior Lenders, the Debtor, and the Port Authority — but not Tutor

Perini — reached a settlement agreement ("**Settlement Agreement**" [BK ECF No. 289-2]) that,

among other things, cleared the way for Debtor to sell the Ground Lease by (a) having the Port

waive existing defaults under the Ground Lease (with specified exceptions limited in scope and

dollar value), and (b) providing that the net proceeds of a sale of the Ground Lease would be paid

into an escrow account and be used to indemnify the Port Authority in its separate litigation against

Tutor Perini.  [Complaint ¶ 6].  The Port also represented in the Settlement Agreement that, as of

May 31, 2020, to the best of its knowledge, information, and belief, there were no defaults under

the Ground Lease other than certain enumerated issues.  [Complaint ¶ 8].  On August 12, 2020,

the Court approved the Settlement Agreement.  [BK ECF 360].

Thereafter, Debtor, which had been seeking a buyer for its assets as the most likely means

of maximizing recoveries for the estate, moved for approval of bidding procedures and a proposed

form of asset purchase agreement for substantially all of Debtor's assets, which consisted primarily

of the Ground Lease.  [BK ECF No. 67].  The Court approved Debtor's proposed bidding

---

2 "Complaint" refers to the state-court complaint that commenced this action, as further
described in this Opinion's ensuing section.  The Complaint is docketed in this adversary
proceeding as an exhibit to the Notice of Removal, ECF No. 1, beginning at PDF page 30.

procedures.  [BK ECF No. 96].  That order, among other things, authorized Debtor to enter into a stalking horse bidder agreement (the "**Stalking Horse APA**") and to conduct an auction.  [*Id.* at PDF pages 14, 16].  Monarch was selected as the stalking horse bidder.  [*Id.* at PDF pages 5–6].  According to the Complaint, the so-called "Monarch Transaction" would have provided approximately $100 million of consideration, including the assumption by a Monarch affiliate of $72 million in debt owed by Debtor to the Senior Lenders.  [Complaint ¶ 8].

The Complaint alleges that subsequently, and in asserted violation of its obligations under the Settlement Agreement, the Port Authority "refused to consent to the Monarch Transaction unless, among other things," Monarch assumed outstanding Ground Lease liabilities and provided "'adequate assurance of future performance'" by escrowing $17 million "for the exclusive benefit of the Port to address, among other things, unsubstantiated allegations [concerning] the Station's elevators."  [Complaint ¶ 9].  According to the Complaint, this demand breached the Settlement Agreement and tortiously interfered with the Monarch Transaction, especially given prior positions taken by the Port Authority, a lack of evidence of any actual problem with the station's elevators, and the Settlement Agreement's provision that the Port Authority "waived the alleged defaults relating to the elevators' compliance" with applicable requirements.  [Complaint ¶ 10].  The Complaint further alleges that the Port Authority's assertion of issues with the elevators was false, and that those assertions and the Port Authority's insistence on unwarranted remedies caused the Monarch Transaction to collapse.  [Complaint ¶¶ 11–12].

Debtor thereafter negotiated a substantially less lucrative new stalking horse APA (the "**JMB Stalking Horse APA**") with JMB Capital Partners Lending ("**JMB**"), which also was the estate's debtor-in-possession lender, and which did not require any assumption of the Senior Lenders' debt, thus leaving their $72 million entitlement underfunded and possibly uncollectable.

[Complaint ¶ 13]. Over the objections of the Senior Lenders as well as Tutor Perini, this Court approved the JMB Stalking Horse APA. [BK ECF No. 557]. In July 2021, Debtor filed a notice of proposed sale authorizing the sale of the Ground Lease to JMB. [BK ECF No. 563]. The Court approved the sale, again over the objections of the Senior Lenders and Tutor Perini (the "**Sale Order**"). [BK ECF Nos. 586, 587, 604].

Following the sale, Debtor converted the case to Chapter 7. [BK ECF No. 638].

B. **The Senior Lenders' State-Court Action Against the Port Authority and Removal**

The Senior Lenders sued the Port Authority in the New York State Supreme Court for New York County (the "**State Action**"). [*See generally* Complaint.]. As summarized in the preceding section of this Opinion, the Senior Lenders asserted that they suffered more than $72 million in damages as a direct result of the Port Authority's alleged breach of the Settlement Agreement and the Port Authority's alleged tortious interference with the Senior Lenders' current and prospective business relationships in connection with Debtor's bankruptcy, namely with regard to the failed transaction with Monarch. [Complaint ¶¶ 8–13]. To briefly recap, the alleged breach consisted of an unwarranted demand for additional transaction funds to cover unnecessary possible elevator work notwithstanding a lack of evidence of problems with the elevators, the Port Authority's prior approvals of the elevators and the fact that the elevators were in continuous use, and the Port Authority's having waived any possible recourse with respect to the elevators among other issues as a term of the Settlement Agreement. [Complaint ¶ 10]. The Complaint asserted two causes of action, one for breach of contract (*i.e.*, the Settlement Agreement) and the other for tortious interference with current and prospective business relationships. [Complaint ¶¶ 65–82]. The Complaint seeks judgment against the Port Authority "of at least $72 million plus accrued interest and fees," punitive damages, and other relief. [Complaint at 25].

The Port Authority filed the notice of removal that led to the adversary proceeding now before this Court, contending as follows. [*See* Notice of Removal, docketed as ECF No. 1 PDF pages 1–26]. The State Action arises in Debtor's bankruptcy case because it necessarily implicates the implementation, interpretation, and/or enforcement of the Court's own orders as well as the Settlement Agreement, which the Court approved and over which the Court has retained jurisdiction. [Notice of Removal ¶ 41]. Specifically, the State Action implicates provisions of the Settlement Agreement that authorized the Port Authority to reasonably object to the assumption or assignment of the Ground Lease so as to receive adequate assurance of future performance, as guaranteed by the Bankruptcy Code. [Notice of Removal ¶ 32]. Further, the Port Authority contended, the State Action would not exist but for the Main Action because the complaint concerns the Port Authority's post-petition conduct and seeks damages based on what the Senior Lenders would have hypothetically received if the Monarch Transaction closed. [Notice of Removal ¶ 42]. The Port Authority further contended that the Senior Lenders' claims are derivative of claims belonging to Debtor. [Notice of Removal ¶ 43].

The Port Authority also contended that the Court has "related to" jurisdiction over the State Action, in that the action – which assertedly mounts a collateral attack on the Court's orders by second-guessing Debtor's business judgment as well as the propriety of the Court-approved sale – will have a conceivable effect on the estate. [Notice of Removal ¶ 49]. Further, the Port Authority contended, the claims in the State Action are "intimately intertwined" with claims against Debtor because they depend upon the termination of the Monarch Transaction and Debtor's replacing Monarch with JMB. [*Id.*].

C. **The Senior Lenders' Motion and the Port Authority's Opposition**

The Senior Lenders' motion for abstention and remand [ECF No. 7] argues, first, that the State Action does not arise under title 11 or arise in a case under title 11 because the claims are

not creatures of bankruptcy law, they can be brought outside of bankruptcy court, and the Senior Lenders are not seeking to implement, interpret, or enforce any Court order. [*Id.* ¶¶ 50–52, 54, 57]. Instead, they are seeking money damages for breach of the Settlement Agreement, which functionally is merely a contract subject to New York law. [*Id.* ¶ 51]. The Port Authority cannot rely on its asserted right to receive adequate assurance of future performance both because the Port Authority waived that right as to the elevators as part of the Settlement Agreement, and because the Port Authority never asserted any unique bankruptcy right to seek adequate assurance during the Main Action. [*Id.* ¶ 58]. Thus, no "arising in" jurisdiction exists. [*Id.* ¶ 59]. Further, the Senior Lenders contend, their claims are not derivative of Debtor's entitlements, as the Senior Lenders have their own independent right to seek damages flowing from a breach of a contract to which they were a party. [*Id.* ¶ 60]. Finally, that the Port Authority's conduct occurred during the bankruptcy is an irrelevant happenstance, because the conduct could have taken place in a non-bankruptcy forum. [*Id.* ¶ 61]

In the remainder of their motion, the Senior Lenders argue the Court does not have "related to" jurisdiction under the governing standard [*id.* ¶¶ 39–43]; that mandatory abstention is warranted under the governing six-factor test, as discussed below [*id.* ¶¶ 46–66]; and that permissive abstention and equitable remand are warranted under 28 U.S.C. §§ 1334(c) and 1452(b) [*id.* ¶ 72].

In opposition [ECF No. 11], the Port Authority contends that the Court has arising in jurisdiction because (1) the action would not exist outside Debtor's bankruptcy because that bankruptcy and the several of the Court's orders in the bankruptcy form the entire factual backdrop for the Senior Lenders' claims [*id.* ¶¶ 32–33, 35–36]; (2) the Complaint requires interpretation, application, and enforcement of the Courts' orders because the Senior Lenders are alleging a

breach of one of those orders [*id.* ¶ 41] and also implicitly challenge the Court's decision to approve (over objections) other orders such as the JMB Stalking Horse APA or the Sale Order [*id.* ¶¶ 42, 44]; and (3) the Senior Lenders' claims are derivative of claims held by the bankruptcy estate because the claims are based on the theory that had the Port Authority acted differently, the Monarch Transaction would have been consummated, Debtor would have received more compensation, and the Senior Lenders would as a result recover more in turn. [*Id.* ¶¶ 47–49].

The Port Authority further contends that the action is "related to" the Main Action [*id.* ¶¶ 51–55], and that remand or abstention is not appropriate. First, it argues, mandatory abstention does not apply because the Court has arising in jurisdiction. [*Id.* ¶¶ 56, 64]. And second, the Court should not permissively abstain because, in brief, the Senior Lenders' claims go to the integrity of the bankruptcy process, implicate several orders, and thus are inseparable from the Main Action. [*Id.* ¶¶ 59–61]. Further, exercising this Court's jurisdiction will promote judicial economy because the Court is already familiar with the relevant issues [*id.* ¶ 62] and the Senior Lenders' claims do not involve idiosyncratic principles of New York law. [*Id.* ¶ 63]. The Port Authority acknowledges that the Senior Lenders' professed right to a jury trial is entitled to weight, but only to a minor extent. [*Id.* ¶ 65].

In reply [ECF No. 13], the Senior Lenders reiterate their earlier jurisdictional arguments and add that the Settlement Agreement's escrow and indemnification provisions are irrelevant because the Port Authority has no right to seek indemnification from the estate with respect to the claims in issue, as the escrow provisions pertained to separate litigation with Tutor Perini. [*Id.* ¶ 21].

The Court held a hearing on the motion on February 24, 2022, at the end of which it requested short supplemental briefing as to whether damages issues alone could support the

existence of arising in jurisdiction.  [ECF No. 15 (Tr.)].  The parties' supplemental submissions are docketed at ECF Nos. 17 and 18.

## Discussion

A. **Jurisdiction**

District courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Each district court "may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  28 U.S.C. § 157(a).  The United States District Court for this District has done so.  *See* Amended Standing Order of Reference, M10-468 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.).  Further, bankruptcy judges "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section. . . ."  28 U.S.C. § 157(b).

As this statutory framework makes plain, the statutory term "core proceedings" encompasses both those "arising under title 11" and those "arising in" cases under title 11.  *See Stern v. Marshall*, 564 U.S. 462, 474–75 (2011); *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 674 (Bankr. S.D.N.Y. 2011).  Proceedings arise under title 11 "when the cause of action or substantive right claimed is created by the Bankruptcy Code."  *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. at 674; *In re AOG Ent., Inc.*, 569 B.R. 563, 574 (Bankr. S.D.N.Y. 2017).  Proceedings arise in a bankruptcy action if they "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."  *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (per curiam) (internal quotations marks and brackets omitted); *In re Tronox*, 603 B.R. 712, 719 (Bankr. S.D.N.Y. 2019).

Non-core proceedings, meanwhile, encompass "related to" proceedings whose claims do

not arise in a bankruptcy case or arise under the Bankruptcy Code, but whose outcome may have

a "conceivable effect" on the bankruptcy case.  *See Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,

639 F.3d 572, 579 (2d Cir. 2011); *KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214,

225 (Bankr. S.D.N.Y. 2019).

In determining whether jurisdiction is proper over a removed case, the Court "look[s] only

to the jurisdictional facts alleged in the Notice[] of Removal."  *In re Methyl Tertiary Butyl Ether*

*("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).

B.  **Legal Standards for a Motion to Abstain and Remand**

1.  **Mandatory Abstention**

Section 1334(c)(2) of title 28 governs mandatory abstention, and the principles of

mandatory abstention apply to a removed action.  *See Mt. McKinley Ins. Co. v. Corning Inc.*, 399

F.3d 436, 446–47 (2d Cir. 2005).  The mandatory abstention doctrine requires federal courts to

abstain from hearing non-core bankruptcy matters concerning state law issues in certain

circumstances.  Specifically:

> Upon timely motion of a party in a proceeding based upon a State law claim or
> State law cause of action, related to a case under title 11 but not arising under title
> 11 or arising in a case under title 11, with respect to which an action could not have
> been commenced in a court of the United States absent jurisdiction under this
> section, the district court shall abstain from hearing such proceeding if an action is
> commenced, and can be timely adjudicated, in a State forum of appropriate
> jurisdiction.

28 U.S.C. § 1334(c)(2).

Under this provision, abstention is required if each of six conditions is met:  (1) the

abstention motion is timely; (2) the action is based on a state law claim; (3) the action is "related

to" but does not "arise in" a bankruptcy case or "arise under" the Bankruptcy Code; (4) section

1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and

(6) that action can be "timely adjudicated" in state court.  *See N.Y.C. Emps.' Ret. Sys. v. Ebbers*

*(In re WorldCom, Inc. Secs. Litig.)*, 293 B.R. 308, 331 (S.D.N.Y. 2003), *aff'd sub nom. Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004); *In re Dreier*, 438 B.R. 449, 457 (Bankr. S.D.N.Y. 2010). Under the third factor, core proceedings are deemed to involve "arising in" or "arising under" jurisdiction, such that mandatory abstention does not apply. *In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002) ("[W]here a matter constitutes a core proceeding, the mandatory abstention provisions of section 1334(c)(2) are inapplicable.").

The party opposing mandatory abstention bears the burden of showing that such abstention is not warranted. *See In re AOG Ent., Inc.*, 569 B.R. at 573.

### 2. Permissive Abstention and Equitable Remand

Section 1334(c)(1) governs permissive abstention. It provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). The Court has discretion whether to permissively abstain. *Hellas Telecomms. (Luxembourg) II SCA v. TPG Cap. Mgmt., L.P.* (*In re Hellas Telecomms. (Luxembourg) II SCA*), 535 B.R. 543, 589 n.36 (Bankr. S.D.N.Y. 2015). Courts typically consider one or more of twelve factors in determining whether to abstain from hearing a proceeding presenting state-law claims on permissive abstention grounds: (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be

entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties. *In re Tronox*, 603 B.R. at 726 (collecting cases).

Courts assessing possible permissive abstention have considered one or more of these factors, and not necessarily all twelve. *Id.* (citing *In re Cody, Inc.*, 281 B.R. 182, 190 (S.D.N.Y. 2002)). A court thus "need not plod through a discussion of each factor in the laundry lists developed in prior decisions." *Id.* (internal quotation marks omitted).

Because federal courts have an obligation to exercise the jurisdiction properly given to them, "there is a presumption in favor of the exercise of federal jurisdiction and against abstention." *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004). And "[t]he movant bears the burden of establishing that permissive abstention is warranted." *In re Residential Cap., LLC*, 515 B.R. 52, 67 (Bankr. S.D.N.Y. 2014).

Meanwhile, a court also may remand an action that was removed under section 1334 on any equitable ground. *See* 28 U.S.C. § 1452(b). When deciding whether to equitably remand under section 1452(b), courts consider factors substantially similar to those considered under the section 1334(c)(1) permissive abstention analysis. *Rahl*, 316 B.R. at 135; *see CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y. 2008). Frequently considered factors include comity with state courts, prejudice to the involuntarily removed parties, and the potential for duplicative use of judicial resources. *See, e.g.*, *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, No. 04 Civ. 708 (GEL), 2004 WL 1048239, at *3 (S.D.N.Y. May 7, 2004); *see also CAMOFI Master LDC v. U.S. Coal Corp.*, 527 B.R. 138, 143

(Bankr. S.D.N.Y. 2015); *In re River Ctr. Holdings, LLC*, 288 B.R. 59, 68 (Bankr. S.D.N.Y. 2003).

At times, courts apply the seven factors identified in *Drexel Burnham Lambert Group, Inc. v.*

*Vigilant Ins. Co. (In re Burnham Drexel Lambert Group, Inc.)*, 130 B.R. 405, 407 (S.D.N.Y. 1991)

(identifying as pertinent factors the effect on efficient administration of bankruptcy estate; the

extent to which state law issues predominate; the difficulty or unsettled nature of the applicable

state law; comity; the degree of relatedness or remoteness of the proceeding to the main bankruptcy

case; the existence of the right to a jury trial; and prejudice to involuntarily removed defendants).

C. **Analysis**
   1. **The Court Has Arising In Jurisdiction, and, as a Result, Mandatory Abstention Is Not Available**

At bottom, the Port Authority is correct that the parties' dispute "arise[s] in" the main

bankruptcy case because, even though the case is "not based on any right expressly created by title

11," it "nevertheless[] would have no existence outside of the bankruptcy." *Baker*, 613 F.3d at

351. The Complaint states two causes of action, the first of which is premised entirely on the Port

Authority's asserted breach of the Settlement Agreement after the Monarch Transaction was

negotiated during the bankruptcy, all of which were crafted during the main bankruptcy case and

approved by this Court. And the second tort-based cause of action turns on the exact same alleged

conduct as the breach-of-contract claim. Moreover, the Port Authority's response, as set forth

among other things in its Notice of Removal, is that its position was justified by other portions of

the Settlement Agreement – specifically portions that it contends preserved the Port Authority's

rights to assert cure objections. Thus, resolving the parties' dispute necessarily will involve

reviewing and interpreting the Settlement Agreement and, potentially, deciding between

competing readings of it, to determine whether the Port Authority breached or tortiously interfered

with it.

This reality is not overcome by the considerations that the Senior Lenders raise, although

those factors are not without force.  The Senior Lenders are correct that their lawsuit is entirely among non-debtors, that only state-law causes of action are stated, and that the plaintiffs do not seek damages from the estate but rather seek payment directly from the Port Authority on a theory that would not necessitate channeling any recovery through the estate for subsequent distribution. This is so because the alleged injury was the collapse of a transaction by which $72 million of the Senior Lenders' debt entitlements would have been assumed by the purchaser or a related entity, so that the Senior Lenders allegedly were directly injured by the non-assumption of their debt and, if they prevail, they can be directly compensated by the Port Authority on account of that harm. Moreover, the action is unlikely to have meaningful if any effect on the estate, now that the Ground Lease sale has occurred and the case has been converted to a Chapter 7 liquidation proceeding.

Despite these considerations, it is inescapable that the alleged breach and the alleged tortious conduct must be evaluated, at heart, by reference to the Settlement Agreement as approved by this Court during the bankruptcy case, with additional reference to the case's overall history including the preliminarily approved terms of the unconsummated Monarch Transaction.  The fact that the Port Authority's entitlements initially originated under the Ground Lease before the bankruptcy case was commenced does not render the Settlement Agreement and proposed Monarch Transaction less central to the parties' dispute.  The case thus "arises in" the Debtor's bankruptcy case before this Court.

Further, the Senior Lenders' explanation of how they were damaged – by the Port Authority assertedly improperly causing the Monarch Transaction that this Court preliminarily approved to collapse, only to be replaced with a much less lucrative transaction that caused the Senior Lenders' debt not to be assumed – also can only have occurred in the bankruptcy case.  One case cited in the Port Authority's supplemental filing is instructive.  *See In re Joe's Friendly Service & Son,*

*Inc. v. Town of Huntington (In re Joe's Friendly Service & Son, Inc.)*, No. 8-14-7001 (REG), Adv. Pro. No. 8-16-8035 (REG), 2020 WL 3120288 (Bankr. E.D.N.Y. June 11, 2020) ("*Friendly Service*"). There, the plaintiff alleged that defendants depressed the value of the debtor's property during a Section 363 sale process with the result that the plaintiff, which was a secondary bidder, incurred loss in the course of its purchase of the property. *Id.* at *1. The court explained that "[w]here a proceeding between non-debtors alleges damages resulting from a concerted effort to interfere with the administration of the estate pursuant to a court-ordered sale of estate assets, the proceeding is 'core' and the bankruptcy court has subject matter jurisdiction over the dispute." *Id.* at *2. Further, the court ruled the matter was core because the factual predicate for the common-law claim was malfeasance during a court-ordered Section 363(b) sale. *Id.* at *14. All of these considerations apply here, and further support the conclusion that this Court enjoys arising in jurisdiction over the Senior Lenders' dispute with the Port Authority.

The Senior Lenders disavow any intention to ask the Court to interpret its own orders. [*See* ECF No. 7 ¶ 51 ("But as discussed above, Plaintiffs are not asking any court to implement, interpret, or enforce the Settlement Order, the Stalking Horse Order, or the Sale Order.")]. But they go on to acknowledge that they are seeking money damages for a breach of the Settlement Agreement, and to urge that the Settlement Agreement "can be interpreted by any New York court." [*Id.*]. For any court to do so is to determine the meaning and import of the Court-approved Settlement Agreement, particularly in light of the defenses advanced by the Port Authority based on other portions of the Settlement Agreement and/or orders of this Court. This reality further demonstrates that the dispute arises in the bankruptcy case.

Because the Court finds arising in jurisdiction based on the centrality of the Settlement Agreement to this case, the Court does not reach the Port Authority's other arguments, including

that the Senior Lenders' claim is derivative of the estate's entitlements.  The Court does, however, note that because the Settlement Agreement and Monarch Transaction contemplated a direct assumption of the Senior Lenders' debt by the purchaser or a related entity, the case does not appear to require assessment of what eventual distribution (if any) the Senior Lenders would have received from the estate.  The Court also declines to base its decision regarding "arising in" jurisdiction on the possibility that the estate may become burdened by discovery as the case moves forward, both because that possibility is speculative and because the Senior Lenders question whether any remaining estate representative will be a source of discovery.

The existence of arising in jurisdiction makes mandatory abstention unavailable by the express terms of the governing statute.  *See* 28 U.S.C. § 1334(c)(2) (mandatory abstention applies to matters that are "related to a case under title 11 but not arising under title 11 or arising in a case under title 11"); *In re Petrie Retail, Inc.*, 304 F.3d at 232; *see also In re Tronox*, 603 B.R. at 725 (mandatory abstention rules "plainly do not apply" in case that arises in title 11).

### 2.  Permissive Abstention and Equitable Remand

Despite having arising in jurisdiction, and notwithstanding the "presumption in favor of the exercise of federal jurisdiction and against abstention," *Rahl*, 316 B.R. at 135 (S.D.N.Y. 2004) (quotations omitted), the Court, in its discretion, will permissively abstain from ruling on this case and equitably remand it to the state court in which it was commenced.  As detailed below, the considerations most pertinent to this decision are that the dispute is entirely among non-debtor parties; the Complaint asserts only state-law claims; there is no damage claim against the estate and, if the Senior Lenders prevail, the relief sought would be paid directly by the Port Authority without any required involvement of the estate; the lawsuit is not likely to have any practical impact on the bankruptcy case; and the claims advanced, while alleging breach of the Court-approved Settlement Agreement, nevertheless turn on the sort of commercial issues that are typical

17

of commercial contract-breach and tortious interference cases, and well within the expertise and

capabilities of New York's state-court system. *Cf. Tilton v. MBIA Inc.*, 620 B.R. 707, 717, 719

(S.D.N.Y. 2020) (where both state and federal courts were capable of analyzing the

"straightforward contract and tort claims" presented, "[o]n balance, the Court finds that the factors

weigh in favor of equitable remand and permissive abstention.").

Applying the permissive abstention factors identified by *Tronox*, *supra*, reveals as follows.

Because this analysis overlaps with the judicially recognized factors governing equitable remand,

*see, e.g.*, *Drexel*, the same discussion explains the Court's decision both to permissively abstain,

and to equitably remand the case.

    1.    *The effect or lack thereof on the efficient administration of the estate if the Court

recommends abstention*. This factor favors both permissive abstention and equitable remand. The

Court perceives little possible impact on the bankruptcy case's and estate's efficient administration

if the case proceeds in state court. The bankruptcy case has been converted to Chapter 7 and there

is no possibility that reorganization efforts could be hindered by the lawsuit. The sale of the

Ground Lease is concluded. There is little case-defining work remaining to be done in the

bankruptcy unless, as the Court believes exceedingly unlikely, ongoing appeals by Tutor Perini in

the absence of a stay of the closed asset sale somehow result in the vacatur of the sale order and

the return of the Ground Lease to the estate. The lawsuit is entirely among non-debtors and no

party has persuasively identified any practical likelihood of a meaningful burden on the bankruptcy

estate.

    2.    *The extent to which state law issues predominate over bankruptcy issues*. This

factor favors permissive abstention and equitable remand. The Complaint asserts exclusively

state-law claims, namely, that under the Settlement Agreement the Port Authority waived the right

to raise the sort of elevator-based demands that it nevertheless asserted with the result that the Monarch Transaction collapsed, and that the Port Authority's conduct tortiously interfered with the Senior Lenders' entitlements and business prospects.  Bankruptcy issues are not raised other than to the limited extent that a written agreement and prospective sale terms approved by this Court must be interpreted and applied under New York contract law.  The Port Authority suggests that damages issues will require a familiarity with bankruptcy processes and the likely outcome had the Monarch Transaction gone forward [ECF No. 11 ¶¶ 9, 46,], but the fact that the Settlement Agreement and Monarch Transaction contemplated satisfaction of the Senior Lenders' entitlements via an assumption of debt either negates that contention, or, at a minimum, greatly reduces its force, such that state-law issues predominate.  *See Worldview Ent. Holdings Inc. v. Woodrow*, 611 B.R. 10, 19 (S.D.N.Y. 2019) ("In a case like this one that will turn on the meaning of the contracts and the course of dealing between the parties and on questions of fiduciary duties under New York law, it cannot be said that either this Court or the Bankruptcy Court for the Central District of California are in a better position to hear the action than the New York State Supreme Court.").

3.     *The difficulty or unsettled nature of the applicable state law*.  This is also a recognized potentially applicable factor under both the permissive abstention and the equitable remand case law, but it does not weigh heavily here.  The state-law analysis required does not appear unduly difficult or unsettled, but the state court where the case was filed does have substantial expertise with exactly the sorts of claims present here, and the case does not present comparably more difficult questions of bankruptcy law.  *See Worldview Ent. Holdings Inc.*, 611 B.R. at 19; *Tilton*, 620 B.R. at 717 (relative institutional abilities of alternative courts are at most a "neutral" remand factor where both state and federal courts were capable of analyzing

"straightforward contract and tort claims," although as noted the *Tilton* court ultimately equitably remanded) .

4.        *The presence of a related proceeding commenced in state court or other non-bankruptcy court*.  This factor does not weigh in favor of remand, as there is no separate action pending elsewhere that could be consolidated with this one.

5.        *The jurisdictional basis if any, other than 28 U.S.C. § 1334*.  The Port Authority points to case law recognizing the Court's inherent authority to construe and enforce its own orders as an independent basis of this Court's jurisdiction.  *See Langston Law Firm v. Mississippi*, 410 B.R. 150, 155 (S.D.N.Y. 2008) (the "Bankruptcy Court had the inherent jurisdiction, independent of 1334," to "interpret the Settlement Order and Settlement Agreement" there at issue, such that "this requirement for mandatory abstention is also not met").

6.        *The degree of relatedness or remoteness of the proceeding to the main bankruptcy case*.  This factor applies to both permissive abstention and equitable remand analysis, and the parties vigorously debate which way it cuts.  The Senior Lenders emphasize that the Port Authority's conduct had little to do with the bankruptcy proceeding and can be fully adjudicated and remedied without involving the estate or this Court, while the Port Authority characterizes the dispute as intertwined with the proceedings before this Court.  The Court views the parties' dispute as not excessively intertwined with the bankruptcy proceedings, and as sufficiently remote that the case can be heard in state court without meaningful impact on or necessary re-litigation and examination of bankruptcy-specific aspects of proceedings in this Court.  Adjudicating the dispute will simply require determining whether the Port Authority breached applicable contracts — which happen to have been approved by this Court — or engaged in tortious commercial conduct that proximately caused economic injury to the Senior Lenders.  *Cf. Gupta v. Quincy Med. Ctr.*, 858

F.3d 657, 665 (1st Cir. 2017) (in mandatory abstention context, where bankruptcy order in question would not "require interpretation by the bankruptcy court," the deciding court "would only need to perform a state law breach of contract analysis").

Contrary to the Port Authority's contentions, the Senior Lenders' claims are not derivative of the estate's because they are based on the direct contractual relationship between the Port Authority and the Senior Lenders. And, as noted, damages computation or payment would not be enmeshed in the bankruptcy proceeding because the Senior Lenders seek direct payment by the Port Authority of damages resulting from the loss of a negotiated arrangement under which another entity would have assumed $72 million in debt that the Debtor owed to the Senior Lenders — thus further minimizing the force of the Port Authority's suggestion (not supported by any estate fiduciary) that the Senior Lenders' claims are duplicative of or enmeshed with the estate's. Nor is the Port Authority correct that the Senior Lenders implicitly attack the Court's subsequent approval of the JMB transaction, because the Senior Lenders refer to that transaction to demonstrate the damages they allege resulted from the Port Authority's earlier allegedly wrongful acts that caused the collapse of the Monarch Transaction, but they do not ask this Court to revisit its approval of the JMB transaction in the circumstances that existed when that transaction was before the Court. All of these considerations stand in contrast to the litigation commenced by Tutor Perini in this case, in which the claims all turned on numerous decisions of this Court and Debtor's strategic attempt to use its bankruptcy case to secure relief from pre-petition obligations including those owed to Tutor Perini. [*See* Bankr. S.D.N.Y. 21-ap-1187, ECF No. 25 at 49–50 ("The degree of relatedness to the underlying bankruptcy case also strongly weights against abstention, really, for reasons I've already noted. But to briefly restate, Tutor Perini's claims that are uniquely raised in this action all concern a theory that the Port Authority unjustly enriched itself, at Tutor Perini's

expense, by entering into settlement in this court, against a backdrop of an involved, hard-fought bankruptcy proceeding.")].

7.      *The substance rather than the form of an asserted "core" proceeding*.  This factor weights in favor of permissive abstention.  As was true in an on-point decision issued by Judge Gerber, the parties' dispute "is a core matter only because the controversy happens to involve the Court's 'arising in' jurisdiction," but a dispute involving solely state-law claims was "'procedurally core,' but not 'substantively core,'" because "[w]hat is more important is that state law issues predominate." *In re Casual Male Corp*, 317 B.R. 472, 478–79 (Bankr. S.D.N.Y. 2004).

8.      *The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court*.  This factor is not implicated here.  At times a remand to state court could leave the parties needing to engage in potentially difficult post-judgment proceedings in bankruptcy court.  But here, as noted, the Senior Lenders demand that the Port Authority directly pay the Senior Lenders the amount of their asserted damages.

9.      *The burden of the court's docket*.  The Court does not rely on this factor, which does not appear to cut either way.

10.     *The likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties*.  The Court perceives no improper forum shopping by either party, notwithstanding their lack of agreement on which forum is permissible and desirable.

11.     *The existence of a right to a jury trial*.  This is a recognized factor in both the permissive abstention and the equitable remand case law.  The Senior Lenders have demanded a jury trial, which is most readily provided in state court.  Thus, although the Court assigns this

factor somewhat modest weight, *see In re Adelphia Communications Corp.*, 285 B.R. 127, 147 (Bankr. S.D.N.Y. 2002), the factor favors remand.

12.     *The presence in the proceeding of non-debtor parties*.  There are no *debtor* parties in the case.  This factor thus favors remand, or, at a minimum, does not disfavor it.

Finally, *Drexel* lists two equitable remand factors not covered by the preceding review of the *Tronox* permissive abstention factors.  First, considerations of "comity," 130 B.R. at 407, favor remand, as the dispute is entirely among non-debtor parties and presents exclusively state-law claims, which ordinarily are the province of our state court system.  Second, *Drexel* asks whether there may be "prejudice to involuntarily removed defendants." 130 B.R. at 407.  The case's only defendant removed it, so this factor is inapplicable.

Thus, to recap and emphasize the Court's key considerations, the factors weighing in favor of permissive abstention and equitable remand do so heavily, while those few counseling against do so with less force if at all.  This is a dispute entirely among non-debtor parties that presents entirely state-law claims, for which the plaintiffs commenced a state-court action in which they requested a jury trial.  The agreements in question did originate in the bankruptcy context, but there is nothing bankruptcy-specific about the controlling provisions of those agreements or the parties' dispute.  Rather, the dispute is a pure commercial dispute concerning whether the Port Authority's conduct breached a contract governed by New York law and/or constituted a tort under New York common law.  The state court has deep expertise in this area and is more than capable of resolving this dispute, which does not turn on any complex or nuanced issues of bankruptcy law, nor on difficult aspects of bankruptcy practice or procedure.  And there is an absence of factors that in other circumstances can weigh heavily against remand, such as potential interference with the bankruptcy estate, undue procedural complexity that would result from the proposed remand,

potential prejudice to other participants in the bankruptcy case, or the necessity of bankruptcy-court enforcement of any eventual judgment. Thus, remanding here, even in the presence of arising in jurisdiction, strikes the proper balance between the "federal interest in efficient bankruptcy administration" and "the interest in comity between the state and federal courts." *Fried v. Lehman Bros. Real Estate Assocs., III, L.P.*, 496 B.R. 706, 793 (S.D.N.Y. 2013).

## **CONCLUSION**

For the foregoing reasons, the Court grants the Senior Lenders' motion. The Senior Lenders are to settle a proposed order on notice directing the Clerk to remand this case to the New York State Supreme Court, New York County, and to close this case. It is **so ordered.**

Dated: New York, New York
     May 25, 2022

*s/ David S. Jones*
HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE